RICHARD KIENER, PLAINTIFF-APPELLANT, v. MANUEL STEINFELD, DEFENDANT-RESPONDENT.

Submitted May 28, 1948—Decided September 3, 1948.

For the plaintiff-appellant, *Ward & McGinnis* and *Louis Friedman.*

For the defendant-respondent, *Reid, Kelly & Flaherty* and *Charles C. Stalter.*

The opinion of the court was delivered by

DONGES, J.   This is an appeal from a judgment entered in the Passaic County Circuit Court by direction of the trial judge.   Plaintiff, on December 21st, 1945, was a patron or guest in the tavern of the defendant, Manuel Steinfeld, in the City of Paterson.   He had been attending a Christmas party where he had several drinks and had a few more in the saloon.   He was seated on a stool at the rear end of the thirty-two feet long bar and leaned his head on his hands on the bar and fell asleep.   Another patron, alleged to have been Richard Grimes, gave plaintiff what is known as the "hot-foot" by inserting matches in his shoes and lighting them, the idea being apparently that he would be awakened by the feeling of heat upon his foot through the shoe.   However, the plaintiff seems to have been so intoxicated that he did not feel the heat, and third degree burns were inflicted upon his foot.   His trousers, sock and underwear burned and

smouldered, and the odor of the fire attracted the attention of another patron who extinguished the fire. Plaintiff says the defendant then put him out on the sidewalk, but this is denied by defendant and not corroborated by any of the witnesses who were in the premises at the time.

Plaintiff brought suit against Steinfeld, the owner, and against Grimes, the alleged perpetrator of the prank. Grimes filed no answer but did appear as a witness for the defendant. He admitted being in the premises at the time in question but denied doing the act, seeing anyone else do it or knowing anything about it. There was evidence that he had admitted doing it. The trial judge, on motion, directed a verdict in favor of the defendant tavern owner and submitted the case to the jury as to Grimes against whom a verdict of $2,500 was returned.

The trial judge, in explaining his ruling to the jury, said that the duty of the tavern keeper was to use reasonable care to protect his guests from obvious dangers and from assault if one were imminent, but he held there was no evidence to connect the defendant with the incident, and "nothing in the evidence to make it appear that he would have any knowledge that any harm was going to come to this man, or that any assault was to be committed upon him." Further, he said, "Now, there is nothing in the evidence that would disclose that Mr. Steinfeld knew that this hot-foot was to be given or that he actually saw it given, or anything of that sort. * * * and there is nothing at all to connect him with the case except the one bare statement of Detective DeLuccia, who, if you will recall, said that about a week after this occurrence took place * * * he went around to see Mr. Steinfeld and Mr. Steinfeld said that he was present, and that he had seen the hot-foot given, and that Mr. Grimes did it. Now, that is all there is in the case to connect him with it at all in any respect, and no matter what weight you choose to give to that, it is nothing but a scintilla of evidence upon which a legal verdict could not possibly be based."

The question presented on this appeal is whether, under the rule of law applied to the case by the trial judge, and

apparently agreed to by the parties, there was more than a scintilla of evidence that the defendant failed to do something that he could and should have done to protect the plaintiff from the assault and injury he suffered. The plaintiff points to and relies upon the testimony of Detective DeLuccia, which the trial judge deemed to be nothing more than a scintilla. This testimony was, in part, as follows:

"Q. What did you say to Mr. Steinfeld at that time? A. I asked what happened in his tavern the week previous.

"Q. What did he say? A. He told me that several men were in the tavern at the time. They were all joking and kidding and giving hot-foots, and he said that Mr. ——

"Mr. Stalter: Kiener.

"A. (Continuing.) Kiener had received a hot-foot in the tavern at—on that day, December 21st.

"Q. Did you ask him whether he saw Kiener get the hot-foot? A. Beg pardon?

"Q. Did you ask him whether he saw Kiener get the hot-foot? A. Yes, yes, he told me.

*      *      *      *      *      *      *

"Q. What else did he say about the hot-foot? A. He said he saw this Kiener get a hot-foot given to him by a Mr. Richard Grimes of 91 Spruce Street."

And later on cross-examination:

"Q. What recalls to your recollection so vividly the fact that Manny said that he saw the hot-foot being given? A. Because it was such an odd case that I recall it, such an odd case of a hot-foot that I recall him saying that they were all joking and laughing in the place.

*      *      *      *      *      *      *

"Q. But do you definitely recall his saying in addition to that that he saw it being made? A. Yes, sir.

"Q. There is no question about that? A. No question about that."

There can be no doubt of the admissibility in evidence of admissions against interest. No case to the contrary is cited. There have been many cases where, on a particular phase of the proofs, at least, such as the identity of the driver of an automobile at the time of the accident, or the agency of the

driver for the owner, evidence of this character has been the only proof. *Mahan* v. *Walker,* 97 *N. J. L.* 304. We are of the opinion that this testimony required the submission of the case to the jury for it to consider and weigh in its appraisement of the conduct of the defendant in the discharge of the duty he owed the plaintiff.

It was, therefore, error to direct a verdict and the judgment is reversed.

*For affirmance*—WACHENFELD, EASTWOOD, WELLS, MC-LEAN, SCHETTINO, JJ. 5.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, DONGES, HEHER, COLIE, BURLING, JACOBS, DILL, FREUND, JJ. 10.